Tyler D. Williams     [ISB No. 8512]
Reid K. Peterson      [ISB No. 10091]
NAYLOR & HALES, P.C.
Attorneys at Law
950 W. Bannock Street, Ste. 610
Boise, ID 83702
Telephone No. (208) 383-9511
Facsimile No. (208) 383-9516
Email: tdw@naylorhales.com; reid@naylorhales.com

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TY JUSTIN WILLIAM WERENKA,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF BOISE, a municipal corporation; CORPORAL NORMAN CARTER, in his official and personal capacity; and OFFICER AVERY WESTENDORF, in his official and personal capacity,<br><br>    Defendants. | Case No: 1:23-cv-00275-BLW<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS COMPLAINT (DKT. 1)** |

## I.   INTRODUCTION

On June 5, 2023, Plaintiff filed a facially deficient complaint seeking millions of dollars against Boise and two officers for claims arising from his 2022 arrest, which he contends caused him to experience some sore muscles and nightmares. The crux of Plaintiff's Complaint is that he was allegedly subjected to excessive force during what he believes was an unlawful arrest without probable cause. His many other claims basically repackage these allegations under different theories of liability. Nevertheless, as shown below, all claims but his Fourth Amendment excessive force claim must be dismissed.

**DEFENDANTS' MTD MEMO - 1.**

## II.   SUMMARY OF ALLEGATIONS

The complaint alleges that on June 11, 2022, at about 3:05 AM, Plaintiff was leaving a parking garage in downtown Boise when he noticed two nearby officers (Cpl. Carter and Ofc. Westendorf) handling a car accident. He stopped and talked to the parking attendant, who asked Plaintiff to leave. Plaintiff left and parked his car, then returned on foot because, as an "activist," he wanted to record the police officers, and while the parking attendant had only told him to leave the garage, he "did not ask him not to return…." (Dkt. 1, ¶¶ 8-12.)

The parking attendant again told Plaintiff to leave. According to Plaintiff, he "began" to leave when Cpl. Carter stopped him and asked why he was interfering with the investigation. Plaintiff, while filming Cpl. Carter on his cell phone, asked how he was interfering, then moved the cell phone closer to Cpl. Carter, at which point Cpl. Carter "slapped" the phone out of his hands, "shoved" Plaintiff by his neck, "threw" him into the wall, and "violently" took him to the ground. Plaintiff was then placed in handcuffs and arrested for resisting and obstructing. Ofc. Westendorf did not intervene to stop the arrest. (*Id.* ¶¶ 13-21.)

The officers transported Plaintiff to jail, seized his phone, and he posted bond. Plaintiff alleges that Cpl. Carter prepared a false report about their encounter that was contrary to what was allegedly depicted in body camera footage reviewed by city prosecutors, which resulted in them charging Plaintiff with resisting and obstructing. In *State v. Werenka*, Ada County Case No. CR01-22-18326, the trial court twice found probable cause existed to pursue the criminal charges. However, the case was dismissed on October 26, 2022, "after" Plaintiff's attorney filed a motion to dismiss. (*Id.*, ¶¶ 22-28.)

Plaintiff now seeks at least $1,000,000 in damages against Defendants because his right thumb lost feeling for a month, and his wrists and back were sore for about one to two weeks or

**DEFENDANTS' MTD MEMO -  2.**

so. He also claims that he had to seek "additional counseling," has "nightmares," and is "wary" of police, though he continues to approach police interactions to film them. (Dkt. 1, ¶¶ 29, 36, 38-39.)

## III.   LEGAL STANDARD

The standards for dismissal under Rule 12(b)(6) are well established. A few points relevant here are worth highlighting. First, under *Iqbal* and *Twombly*, it is insufficient for a plaintiff to merely assert labels, conclusions, or a formulaic recitation of a claim's elements. Indeed, Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Second, a claim must be <u>plausible on its face</u>, such that the court can draw a reasonable inference that a defendant is liable. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Facts that are merely consistent with liability fall short of such plausibility. *Id.* at 557. Third, dismissal is also appropriate when the plaintiff has included allegations affirmatively showing a bar to recovery. *Weisbuch v. Cnty of Los Angeles*, 119 F.3d 778, 783 n. 1 (9th Cir. 1997). Last, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

## IV.   ARGUMENT

### A.  Federal Claims

Plaintiff's federal claims are all under 42 U.S.C. § 1983. To state a plausible claim under this statute, the plaintiff must sufficiently allege that the defendants acted under color of state law and their conduct deprived the plaintiff of a particular right protected by the Constitution or federal law. *Tatum v. City & Cnty of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006).

**DEFENDANTS' MTD MEMO - 3.**

Plaintiff alleges nine causes of action against Defendants under Section 1983, as follows: Count I: unlawful arrest in violation of the Fourth Amendment (Carter); Count II – excessive force in violation of the Fourth Amendment (Carter); Count III – unreasonable search in violation of the Fourth Amendment (Carter); Count IV – retaliatory arrest in violation of the First Amendment (Carter); Count VI – failure to intervene in violation of Fourteenth Amendment (Westendorf); Count VII – defamation in violation of the Fourteenth Amendment (Carter); Count VIII-1 – IIED in violation of the Fourteenth Amendment (all Defendants); Count IX – malicious prosecution in violation of Fourteenth Amendment (all Defendants); Count X – municipal liability against Boise and officers in official capacities. As shown below, all of Plaintiffs federal claims must be dismissed, except for the excessive force claim against Cpl. Carter (Count II).[1]

### 1.   The existence of probable cause defeats Plaintiff's claims.

Plaintiff's federal claims all share one common essential element that he asserts is lacking: probable cause. However, the trial court in the prior criminal action already twice decided that probable cause existed. Moreover, the Complaint itself shows probable cause. Accordingly, his federal claims must be dismissed (Counts I-IV, VII, VII-1, IX-X).

### a.   Plaintiff is barred from relitigating probable cause.

Collateral estoppel (or issue preclusion) establishes a legal barrier against parties from relitigating identical issues in successive actions, whether criminal or civil, so long as the plaintiff had a full and fair opportunity to litigate the issue. *Scafidi v. Las Vegas Metro. Police Dept.*, 966 F.3d 960, 963 (9th Cir. 2020); *Picatti v. Miner*, 165 Idaho 611, 617 (2019).

The doctrine has five factors:

(1) the party against whom the earlier decision was asserted had a full and fair

---

[1] Plaintiff's defamation and IIED claims are state, not federal, claims. To the extent Plaintiff actually intended to assert them as federal claims, they should be dismissed as such.

**DEFENDANTS' MTD MEMO - 4.**

>opportunity to litigate the issue decided in the earlier case; (2) the issue decided in
>the prior litigation was identical to the issue presented in the present action; (3) the
>issue sought to be precluded was actually decided in the prior litigation; (4) there
>was a final judgment on the merits in the prior litigation; and (5) the party against
>whom the issue is asserted was a party or in privity with a party to the litigation.

*Id.* (quoting *Rodriguez v. Dept. of Correction,* 136 Idaho 90, 93 (2001).

Plaintiff is barred from relitigating probable cause because that issue was already decided in his prior criminal case, *State v. Werenka*, Ada County Case No. CR01-22-18326.[2] Plaintiff had a full and fair opportunity to litigate probable cause. On June 13, 2022, Cpl. Carter signed a Probable Cause Affidavit in Support of Arrest. (Williams Decl., Exhs. A-B.) The magistrate judge then found the existence of probable cause, noted the same on the misdemeanor citation, set bond, and the matter proceeded as normal. (*Id.*, Exhs. A, C.) A probable cause hearing also took place on October 14, 2022, probable cause was again found, and the criminal complaint was filed. (*Id.*, Exhs. A, D.) The case was then set for jury trial for October 31 (which was later vacated). (*Id.*, Ex. A.) During this time, Plaintiff had every opportunity to challenge probable cause. He elected not to do so.

Instead, Plaintiff filed a motion to dismiss arguing that his conduct did not rise to the level of an actual violation for resisting/delaying/obstructing, under I.C. § 18-705. He again elected not to address probable cause. (*Id.*, Ex. E.) The State of Idaho then filed a motion to dismiss, asserting that although there was probable cause for the arrest, the complexion of the case had changed and it could no longer prove the violation beyond a reasonable doubt. (*Id.*, Ex. F.) The trial court granted the motion and dismissed the case. (*Id.*, Ex. G.)

---

[2] The Court may take judicial notice of adjudicative facts under F.R.E. 201, including public records from a criminal case, without converting a motion to dismiss into a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-999 (9th Cir. 2018). Defendants request that the Court take judicial notice of records from Plaintiff's criminal case, attached as exhibits to the Declaration of Tyler D. Williams.

**DEFENDANTS' MTD MEMO - 5.**

Regarding the remaining elements of collateral estoppel, the probable cause decision in Plaintiff's criminal case is identical to the issue of probable cause in the present case, the trial court actually decided that probable cause existed, and there was a final judgment on the merits. For purposes of collateral estoppel, an interlocutory decision is deemed final when it has conclusive effect, even if it does not resolve the case as a whole. *Picatti*, 165 Idaho at 620. Here, as is normal in misdemeanor cases in Idaho, it was necessary for the existence of probable cause to be established before the case could proceed. *See* Idaho Rules of Criminal Proceedings, Title II (establishing rules for preliminary proceedings, including probable cause). The trial court decided the existence of probable cause on June 13, for purposes of the initiation of the case and setting bond, then again on October 14, for purposes of authorizing the filing of the criminal complaint moving forward to trial. By that point the probable cause decision was conclusive and it was only the merits of the case that were left to be decided. Last, Plaintiff was a party in both the criminal case and the present civil case.

In sum, collateral estoppel applies here to bar Plaintiff from relitigating probable cause, where he had a full and fair opportunity to litigate that issue in his criminal case, chose not to do so, and it was decided by the trial court. Accordingly, the Court should dismiss Plaintiff's federal claims (Counts I-IV, VII, VII-1, IX-X).

### b.    The Complaint itself shows the existence of probable cause.

Not only is Plaintiff barred from relitigating probable cause, his own Complaint shows that it existed for resisting/delaying/obstructing and criminal trespass. His mere conclusion that probable cause did not exist is insufficient to overcome his own factual allegations that show otherwise. Accordingly, there is an independent basis to dismiss the same claims as set forth above

The issue of "[w]hether probable cause exists depends upon the reasonable conclusions to

**DEFENDANTS' MTD MEMO - 6.**

be drawn from the facts known to the arresting officer at the time of the arrest. . . ." *Devenpeck v. Alford*, 543 U.S. 146, 152-153 (2004). Probable cause exists to arrest a suspect without a warrant "if the available facts suggest a 'fair probability' that the suspect has committed a crime." *Tatum*, 441 F.3d at 1094. If the officer observes the conduct then the suspect may be arrested without a warrant, even if the offense only carries a minor penalty. *Id.*

> i.  *The Complaint shows probable cause to believe that Plaintiff committed the crime of resisting and obstructing officers.*

Probable cause for the crime of resisting and obstructing officers exists if there is a fair probability under the circumstances that a suspect has willfully resisted, delayed, or obstructed a public officer in the discharge or attempted discharge of their duties. I.C. § 18-705. "Three elements must be satisfied in order to find a violation of the statute: (1) the person who was resisted, delayed or obstructed was a law enforcement officer; (2) the defendant knew that the person was an officer; and (3) the defendant also knew at the time of the resistance that the officer was attempting to perform some official act or duty." *State v. Bishop*, 146 Idaho 804, 816, 203 P.3d 1203, 1215 (2009) (citing *State v. Adams*, 138 Idaho 624, 629, 67 P.3d 103, 108 (Ct. App. 2003)) (internal quotations omitted).

The facts alleged by Plaintiff establish probable cause for an arrest under I.C. § 18-705. Simply put, Plaintiff alleges that on June 11, 2022, at about 3:05 AM, he was leaving a parking garage in downtown Boise when he noticed two nearby officers handling a car accident in the garage. (Dkt. 1, ¶¶ 8-9.) He stopped and interacted with the parking attendant, who told him to leave. Plaintiff left to park his car outside, but then came back on foot and began filming the officers as they dealt with the collision. The parking attendant again told Plaintiff to leave. (*Id.*, ¶¶ 10-13.) Plaintiff's allegations make clear that this all happened in the presence of Cpl. Carter and

**DEFENDANTS' MTD MEMO - 7.**

Ofc. Westendorf at the same time they were handling the car collision. (*See id.*)

Thus, Plaintiff's Complaint establishes that the officers were presented with a circumstance where, while addressing one situation involving a car collision, they had to deal with a second simultaneous situation caused by Plaintiff apparently ignoring the parking attendant's orders to leave. Under these circumstances there was certainly a fair probability, regardless of the lack of a later conviction, that Plaintiff's conduct caused delay or obstruction of the officer's handling of the car accident. And, as pled, Cpl. Carter and Ofc. Westendorf were actual officers, Plaintiff knew they were officers, and knew they were performing official duties as police officers. This is sufficient to establish probable cause for resisting/obstructing.

> ii. *The Complaint shows probable cause to believe that Plaintiff committed the crime of trespass.*

Because the standard for probable cause is objective, "probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest." *United States v. Struckman*, 603 F.3d 731, 741 (9th Cir. 2010). The facts alleged in the Complaint demonstrate that not only was there probable cause for the stated reason of Plaintiff's arrest, there was also probable cause to arrest him for criminal trespass.

Criminal trespass exists when a person:

> enters or remains on real property of another without permission, knowing or with reason to know that his presence is not permitted. A person has reason to know his presence is not permitted when, except under a landlord-tenant relationship, he fails to depart immediately from the real property of another after being notified by the owner or his agent to do so, or he returns without permission or invitation within one (1) year, unless a longer period of time is designated by the owner or his agent….

I.C. § 18-7008(2)(a). There are exclusions to criminal trespass for invitation, license, contract, and

**DEFENDANTS' MTD MEMO - 8.**

privilege, including for example, entering and remaining in a store during business hours and not being asked to leave by the owner or the owner's agent. I.C. § 18-7008(6)-(7).

Here, as set forth above, Plaintiff's Complaint shows that he was originally lawfully on the premises, but was asked to leave the parking garage by a parking attendant. He left, but then returned on foot without permission and was again told to leave. This happened in the presence of the police officers. As such, there was a fair probability as demonstrated by the Complaint that Plaintiff engaged in criminal trespass. Accordingly, the Complaint alleges the existence of probable cause for Plaintiff's arrest.

### 2.   The Complaint does not show that Ofc. Westendorf failed to intervene.

Plaintiff alleges that Ofc. Westendorf failed to intervene, amounting to a Fourteenth Amendment violation. (Dkt. 1, Count VI, ¶¶ 60-63.) "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizens." *United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). Thus, in order to prevail on such a claim, Plaintiff must sufficiently plead and prove that Ofc. Westendorf had reason to know that: (a) Plaintiff was unlawfully arrested, searched, or subjected to excessive force; and (b) had a realistic opportunity to intervene to prevent the harm from occurring. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

As shown above, to the extent this claim is based on Ofc. Westendorf's alleged failure to intervene in Plaintiff's arrest or incidental search, it is precluded because the criminal trial court decided that probable cause existed and, in any event, the Complaint itself shows the existence of probable cause. To the extent this claim is based on Ofc. Westendorf's alleged failure to intervene

**DEFENDANTS' MTD MEMO - 9.**

in Cpl. Carter's alleged excessive force, the claim likewise fails.

Nothing in the Complaint shows Ofc. Westendorf had knowledge of what was happening between Cpl. Carter and Plaintiff such to apprise him he should intervene. The only facts relevant to Ofc. Westendorf allege that he was responding to the car accident, that he did not stop Cpl. Carter, that he helped transport Plaintiff, and that Plaintiff had a subsequent unrelated interaction with Ofc. Westendorf on another evening. (Dkt. 1, ¶¶ 8, 21, 22, 40.) Further, the Complaint affirmatively shows Ofc. Westendorf had no realistic opportunity to intervene even if he knew to do so, given the quick succession of events described by Plaintiff. Indeed, as Plaintiff alleges that Cpl. Carter "slapped" the phone out of his hands, "shoved" Plaintiff by his neck, "threw" him into the wall, and "violently" took him to the ground. (*Id.*, ¶¶ 16-18.) Nothing indicates a pause or slow action that would have reasonably alerted Ofc. Westendorf and given him time to do anything. Accordingly, Count VI should be dismissed.

### 3.   The Complaint fails to adequately allege malicious prosecution.

Plaintiff alleges that he was maliciously prosecuted. (Dkt. 1, Count IX, ¶¶ 83-88.) This claim requires a plaintiff to demonstrate that the defendant prosecuted him with malice and without probable cause, and that he did so for the purpose of denying him a specific constitutional right. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). Its essential elements are as follows: (1) the defendant instituted proceedings with malice; (2) without probable cause; (3) the plaintiff was purposefully denied a specific constitutional right; and (4) the criminal case terminated in plaintiff's favor. *Id.*

Importantly, there is a presumption that law enforcement officers are not liable for malicious prosecution where a prosecutor actually files charges. *Id.* "If a prosecutor applies his independent judgment and makes the decision to charge an individual with a crime, that decision

**DEFENDANTS' MTD MEMO - 10.**

is an intervening cause which shields the arresting officer from liability." *Putnam v. Boll*, 2017 WL 5479928 at *3 (D. Idaho, Nov. 14, 2017) (citing *Hartman v. Moore*, 547 U.S. 250, 262–63 (2006)).

Here, the existence of probable cause, as set forth above, necessarily defeats Plaintiff's malicious prosecution claim. Moreso, the Complaint does not allege that the city prosecutor's independent judgment was somehow thwarted by Cpl. Carter. In fact, it affirmatively shows the opposite, by explicitly stating that the prosecutors reviewed the body camera footage as part of their prosecution. (Dkt. 1, ¶ 85.) In other words, the Complaint itself shows that, regardless of what Cpl. Carter allegedly misstated in his report, the prosecutor otherwise reviewed the relevant evidence and still made the decision to prosecute Plaintiff. Under these allegations Plaintiff's malicious prosecution claim fails on its face.

Further, the Complaint fails to show malice. While Rule 9 does not require elevated pleading for malice or intent, it does not give Plaintiff "license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686-87. As with so much of his Complaint, Plaintiff offers only the conclusory statement in Count IX that "Cpt. Carter and Ofc. Westendorf initiated charges of resisting and obstructing with malice." (Dkt. 1, ¶ 84.) Again, these are merely conclusory recitations of the elements of the claim. Nowhere in the Complaint's factual assertions does Plaintiff provide the necessary non-conclusory allegations as to how and when Cpl. Carter and Ofc. Westendorf maliciously initiated charges against him. Rather, Plaintiff alleges "Because of [Cpl. Carter's report], Mr. Werenka was *charged by the Boise City Attorney's Office*"—not Cpl. Carter or Ofc. Westendorf—"with resisting and obstructing, a violation of Idaho Code § 18-705." (Dkt. 1, ¶ 26) (emphasis added). The pleading deficiency is especially glaring as to Ofc. Westendorf, who isn't even alleged to have drafted the report that the Boise City Attorney's Office

**DEFENDANTS' MTD MEMO - 11.**

allegedly relied upon. (Dkt. 1, ¶¶ 23-26.) In fact, the last action that Ofc. Westendorf allegedly took prior to the initiation of criminal proceedings is to have transported Plaintiff to Ada County jail. (*Id.*, ¶ 22.) Accordingly, Count IX should be dismissed.

### 4. The Complaint does not plausibly allege municipal liability.

Plaintiff alleges that Boise's policies, practices, or customs caused his constitutional deprivation. (Dkt. 1, Count X, ¶¶ 89-90.) A city may be liable under Section 1983, but not under a *respondeat superior* theory. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). Instead, the plaintiff must prove so-called *Monell* liability. A plaintiff can only do so through a limited number of ways. *See, e.g., Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) (expressly adopted official policy or widespread or longstanding practice or custom); *Lytle v. Carl*, 382 F.3d 978, 981 (9th Cir. 2004) (acts of final policymaker); *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (ratification); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012) (failure to train or supervise).

Regardless of which theory of *Monell* liability a plaintiff asserts, the plaintiff must plead and prove the entity's policy, practice, or custom amounted to deliberate indifference to the plaintiff's constitutional right and was the moving force behind the violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). And to reiterate, a plaintiff cannot simply restate these standards. Instead, a plaintiff must provide facts supporting the elements of each claim and must allege facts showing a causal link between the defendant and plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

In the present case, Plaintiff has failed to adequately allege any constitutional deprivation based on false arrest, unlawful search, retaliatory arrest, failure to intervene, or malicious prosecution, due to the existence of probable cause as shown above. Accordingly, he cannot

**DEFENDANTS' MTD MEMO - 12.**

maintain a *Monell* claim against Boise. More so, the Complaint is devoid of facts showing any plausible theory of *Monell* liability. The "Facts" section simply alleges events from the June 11, 2022 arrest, related criminal proceedings, and damages. (Dkt. 1, ¶¶ 8-37.) It then vaguely refers to a <u>subsequent</u> incident on April 29, 2023, where Plaintiff was filming a police interaction and Ofc. Westendorf allegedly shined a flashlight into Plaintiff's phone, purportedly disrupting the camera (*id.* ¶¶ 38-40). Then, under Count X, Plaintiff merely recites the basic legal elements of a *Monell* claim, followed by a list of generic and conclusory characteristics of the purportedly unlawful policies that "involve" things such as false arrest and excessive force. He then again concludes that these things caused his deprivations. (Dkt. 1, ¶ 90-91.)

Nothing contained in these allegations plausibly show or even minimally suggest that Boise's policies, practices, or customs, caused Plaintiff to suffer a constitutional violation. Nothing indicates that any of the things Plaintiff complains about were the result of a deliberately indifferent policy, custom, or practice of Boise. To survive a motion to dismiss, Plaintiff was required to plead more than bare, conclusory statements and recitation of legal elements. He must allege sufficient facts giving fair notice to the city to defend itself. He has wholly failed to do so. Accordingly, Count X should be dismissed.[3]

### B. State Claims

Plaintiff alleges the following state law claims: Count V – assault and battery (Carter); Count VII – defamation (Carter); Count VIII-1 – IIED (all Defendants); Count VIII-2 – false arrest (all Defendants); and Count IX – malicious prosecution (all Defendants). These claims are facially

---

[3] The Complaint also names Cpl. Carter and Ofc. Westendorf in their official capacities. However, an official-capacity claim is the same as a claim against the entity, which is the real party in interest. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985). Naming a political subdivision and individuals in their official capacity is thus redundant and they should be dismissed as such. *See, e.g., Tuinstra v. Bonner Cnty*, 2021 WL 2534983 (dismissing official-capacity defendant as redundant).

**DEFENDANTS' MTD MEMO - 13.**

deficient as shown below.

**1.  Plaintiff failed to post the mandatory bond.**

Under Idaho law, a plaintiff must post a bond as a mandatory precondition to suing a law

enforcement officer. Specifically:

> Before any civil action may be filed against any law enforcement officer or service
> of civil process on any law enforcement officer, when such action arises out of, or
> in the course of the performance of his duty, or in any action upon the bond of any
> such law enforcement officer, the proposed plaintiff or petitioner, as a condition
> precedent thereto, shall prepare and file with, and at the time of filing the complaint
> or petition in any such action, a written undertaking with at least two (2) sufficient
> sureties in an amount to be fixed by the court. The purpose of this requirement is to
> ensure diligent prosecution of a civil action brought against a law enforcement
> officer, and in the event judgment is entered against the plaintiff or petitioner, for
> the payment to the defendant or respondent of all costs and expenses that may be
> awarded against the plaintiff or petitioner, including an award of reasonable
> attorney's fees as determined by the court.

I.C. § 6-610(2). This requirement applies to state law claims brought in federal court. *Bowman v.*

*City of Boise*, 2022 WL 990560 at *1 (D. Idaho April 1, 2022).

Plaintiff plainly sued two law enforcement officers for alleged misconduct arising out of

or during the performance of their duties as officers. (Dkt. 1, ¶¶ 6-7); *see also* I.C. §§ 6-619(1) and

19-5101(defining law enforcement officers and peace officers, respectively). He did not post any

bond. Accordingly, the state law claims against Cpl. Carter and Ofc. Westendorf must be dismissed

(Counts V, VII, VIII-1, VIII-2).

**2.  Plaintiff's state claims are all barred by the Idaho Tort Claims Act.**

**a.  The City of Boise is immune.**

Under the Idaho Torts Claims Act ("ITCA"), "governmental entities are subject to liability

for their own negligent or wrongful acts, and those of their employees who were acting within the

course and scope of their employment." *Williamson v. Ada County*, 170 Idaho 204, 210, 509 P.3d

**DEFENDANTS' MTD MEMO - 14.**

1133, 1139 (2022) (quoting *Hoffer v. City of Boise*, 151 Idaho 400, 402, 257 P.3d 1226, 1228 (2011)); *see also* I.C. § 6-903. "However, the ITCA also expressly exempts certain causes of action from the general rule that the entity is subject to liability." *Id.*

Specifically, a governmental entity is immune for any claim which "[a]rises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." I.C. § 6-904(3). Such immunity is complete and applies to the entity regardless of the employee's conduct or intent. *Bates v. 3B Detention Cntr*, 2016 WL 1755404 at *3 (D. Idaho May 2, 2016). Here, Plaintiff's false arrest claim (Count VIII-2) and his malicious prosecution claim (Count IX) are expressly identified in the statute as torts that carry immunity. These claims must therefore be dismissed as to the City.

Additionally, while a claim for IIED is not specifically identified in the ITCA immunity provision, "a tort claim need only arise out of the type of conduct listed in Idaho Code section 6-904, which means it must originate or stem from such conduct." *James v. City of Boise*, 160 Idaho 466, 484 (2016) (cleaned up). "Immunity under the statute is not abrogated by changing the legal theory under which a claim for recovery is sought." *Id.*

Plaintiff's IIED claim alleges that Cpl. Carter and Ofc. Westendorf "were intentional and reckless as they had plenty of time to consider their actions prior to their contact with Mr. Werenka, while transporting him to the jail, and while completing their reports" and "their conduct was extreme and outrageous as they falsely arrested a citizen for Constitutionally protected conduct." (Dkt. 1, ¶¶ 72-73.) Plaintiff's allegations thus plainly show that his IIED claim arises out of the type of conduct granted immunity by the ITCA—battery, false arrest, and libel and slander (defamation), as alleged by Plaintiff in other claims in this matter. Plaintiff cannot evade the ITCA's grant of immunity simply by repackaging his claims for

**DEFENDANTS' MTD MEMO - 15.**

assault and battery, defamation, and false arrest, as another legal theory. His IIED claim falls squarely under the ITCA's immunity provision.

For these reasons all of Plaintiff's state claims against the City of Boise must be dismissed (Counts VIII-1, VIII-2, IX.)

### b.   Corporal Carter and Officer Westendorf are immune.

As stated above, government employees acting in the course and scope of their employment are also immune under the ITCA for the aforementioned torts if they act "without malice or criminal intent." I.C. § 6-904. There is "a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment and without malice or criminal intent." I.C. § 6-903(e).

For purposes of the ITCA, malice is "the intentional commission of a wrongful or unlawful act without legal justification or excuse, whether or not the injury was intended." *Tapp v. City of Idaho Falls*, 2021 WL 5331770 (D. Idaho June 14, 2021) (quoting *James*, 160 Idaho at 484). Criminal intent "means the intentional commission of what the person knows to be a crime." *James*, 160 Idaho at 484.

Plaintiff's complaint fails to plead any facts showing that Cpl. Carter and Ofc. Westendorf were acting outside the course and scope of their duties or with malice or criminal intent. Instead, Plaintiff's allegations affirmatively show the officers were acting in the course and scope of their duties, and the only reference to malice (there is no mention of criminal intent) is in connection with its bare recitation of the elements of defamation (¶ 69) and malicious prosecution (¶ 84). But Plaintiff cannot evade the protections of the ITCA merely by reciting the elements of a tort. There must be something more than just a recitation of the elements of the torts to remove Defendants from the protections of ITCA for these torts or ITCA's protections would be meaningless.

**DEFENDANTS' MTD MEMO - 16.**

Plaintiff's failure to allege anything more than just the elements of each of the state law torts is insufficient to move these claims outside of the protections of Idaho Code § 6-904(3). (*See* Dkt. 1, ¶¶ 54-57, 65-69, 72-75, 78-79, and 84-86.) Accordingly, Counts V, VII, VIII-1, VIII-2, and IX should be dismissed.

### 3. Plaintiff otherwise failed to adequately plead all of his state claims.

#### a. Assault and Battery

Plaintiff alleges that Cpl. Carter assaulted and battered him. (Dkt. 1, Count V, ¶¶ 54-59.) This is essentially an analogous claim to his Constitutional excessive force claim. While Defendants do not challenge here the excessive force claim, this state claim fails due to the lack of a bond and because Cpl. Carter is entitled to immunity, as discussed above. More so, to be clear, assault and battery are two separate claims. Civil assault is an "unlawful threat or offer to do bodily harm or injury to another." *Miller v. Idaho State Patrol*, 150 Idaho 856, 871 (2011). "Civil battery consists of an intentional contact with another person that is either unlawful, harmful, or offensive." *Id.* at 869.

Here, the Complaint does not show assault. It plainly alleges that while Plaintiff and Cpl. Carter were talking, Plaintiff moved his cell phone closer to Carter, who then physically contacted and arrested Plaintiff. As pled, nothing indicates a threat by Cpl. Carter. He simply reacted with alleged battery. To the extent any portion of this claim survives the bond and immunity issues, it should be narrowed to exclude the assault claim.

#### b. False Arrest and Malicious Prosecution

Plaintiff alleges that Cpl. Carter and Ofc. Westendorf falsely arrested him without probable cause and all Defendants maliciously prosecuted him. (Dkt. 1, Count VIII-2, ¶¶ 77-82, Count IX, ¶¶ 83-88.) These claims are essentially state counterparts of Plaintiff's federal

**DEFENDANTS' MTD MEMO - 17.**

claims and share similar elements. *See, e.g.,* Idaho Civ. Jury Instruction 4.10 (false arrest); *Myers v. City of Pocatello*, 98 Idaho 168, 169 (1977) (malicious prosecution); *see also Howard v. Felton*, 85 Idaho 286, 290 (stating that malicious prosecution "has never been regarded with favor by the courts."). Both claims require a showing of a lack of probable cause. As such, they should be dismissed, because the criminal trial court decided that probable cause existed and the Complaint itself shows probable cause for resisting/delaying/obstructing an officer and criminal trespass. Further, as to malicious prosecution specifically, Plaintiff has failed to plausibly plead facts showing malice or showing the prosecutors were not independent, as discussed above.

### c.  Intentional Infliction of Emotional Distress

Plaintiff alleges that All Defendants' conduct intentionally inflicted emotional distress on him. (Dkt. 1, Count VIII-1, ¶¶ 71-76.) To establish an IIED claim, the plaintiff must plead and prove that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) there was a causal connection between the defendant's wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress was severe. *James*, 160 Idaho at 484.

"To support an IIED claim, conduct must be more than merely unjustifiable, but rather must rise to the level of atrocious behavior beyond all possible bounds of decency." *Bollinger v. Fall River Rural Elec., Co-op., Inc.*, 152 Idaho 632, 643 (2012) (cleaned up) (emphasis added). Further, as to the requisite level of severity of the emotional distress:

> Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is

**DEFENDANTS' MTD MEMO - 18.**

seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. <u>The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it</u>. The intensity and the duration of the distress are factors to be considered in determining its severity.

*Alderson v. Bonner*, 142 Idaho 733, 741 (2006) (quoting Restatement (Second) of Torts § 46, cmt. J. 1965) (emphasis added).

Plaintiff's IIED claim fails to the extent it duplicates the other claims on which he cannot prevail because of the existence of probable cause (e.g., false arrest, retaliatory arrest, unlawful search malicious prosecution, failure to intervene). His pleading also falls far short of showing that the alleged misconduct was extreme or outrageous or that it caused him such severe emotional distress that no reasonable person could be expected to endure it. Instead, he has simply asserted bare conclusions and recited basic elements of the claim. Accordingly, Plaintiff's IIED claim should be dismissed on this alternative ground.

### d. Defamation

Plaintiff alleges that Cpl. Carter defamed him in his sworn police report and orally to Ofc. Werenka and the parking lot attendant. (Dkt. 1, Count VII, ¶¶ 65-67.) Where, as here, the defendant is not a public figure, defamation requires that the plaintiff plead and prove that the defendant: "(1) communicated information concerning the plaintiff to others; (2) the information was defamatory; and (3) the plaintiff was damaged because of the communication." *Berian v. Berberian*, 168 Idaho 394, 402 (2020). "A defamatory statement is one that tends to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business." *Verity v. USA Today*, 164 Idaho 832, 844-45 (2019) (cleaned up).

Significantly, however, there is an absolute privilege to defamation when the statement

**DEFENDANTS' MTD MEMO - 19.**

is made in the course of, connected with, or related to a judicial proceeding. *Richeson v. Kessler*, 73 Idaho 548, 551 (1953); *Berian*, 168 Idaho at 402–03. This is so even if the statement is made with malicious intent or knowledge of its falsity. *Id.* Plaintiff's allegations show that the sworn report by Cpl. Carter was made in relation to judicial proceedings; in fact, his very claim is that it initiated his alleged wrongly prosecution. As such, Plaintiff cannot establish a defamation claim against Cpl. Carter based on that report.

As to the alleged oral statement Cpl. Carter made to the parking attendant and Ofc. Westendorf, this is only mentioned in passing in one sentence under Count VII-1. (Dkt. 1, ¶ 66.) As pled, Cpl. Carter's statement appears to have been made for purposes of criminal prosecution, and thus Cpl. Carter likewise enjoys an absolute privilege for this statement. Moreover, the allegations related to the oral statement fail to show defamation. Indeed, there are no factual allegations surrounding the statement, nor is there any plausible showing of how making the statement, apparently in the moment in connection with the arrest, to the other arresting officer and a witness on scene exposed Plaintiff to public contempt, disgrace, or ridicule. Again, Plaintiff merely relies on bare conclusory allegations. Accordingly, the defamation claim against Cpl. Carter (Count VII-1) should be dismissed.

## V.   CONCLUSION

As shown above, Defendants respectfully request the Court grant its partial motion to dismiss.

DATED this 28th day of July, 2023.

NAYLOR & HALES, P.C.

By: */s/ Tyler D. Williams*
TYLER D. WILLIAMS, Of the Firm
Attorneys for Defendants

**DEFENDANTS' MTD MEMO -  20.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of July, 2023, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person:

- Johnathan Baldauf    [johnathan@baldaufmasser.com](mailto:johnathan@baldaufmasser.com)
  Baldauf Masser, LLP
  *Attorney for Plaintiff*

*/s/ Tyler D. Williams*
TYLER D. WILLIAMS

**DEFENDANTS' MTD MEMO - 21.**